Alyson C. McAllister (#9886)
**SYKES MCALLISTER LAW OFFICES, PLLC**
311 S. State Street, Suite 240
Salt Lake City, Utah 84111
Telephone No. (801) 533-0222
alyson@sykesmcallisterlaw.com

*Attorney for Plaintiffs*

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## SOUTHERN DIVISION

| | |
|---|---|
| VAUGHN REID, for himself, and VAUGHN REID and LILIBETH FOSTER, on behalf of V.G.R., a minor,<br><br>Plaintiffs,<br><br>vs.<br><br>COLONEL MICHAEL RAPICH, SUPERINTENDENT OF THE UTAH HIGHWAY PATROL; SEVIER COUNTY; RICHFIELD CITY; SERGEANT BRONSON WOOD; DEPUTY TROY CAMPBELL; SERGEANT ADRIAN HILLIN; TROOPER REBECCA MARSHALL; TROOPER BREMMER; and JOHN and JANE DOES 1-10,<br>Defendants. | **COMPLAINT<br>AND<br>JURY DEMAND**<br><br><br>Case No. _____<br><br>District Judge _____ |

Plaintiffs Vaughn Reid, on his own behalf, and Vaughn Reid and Lilibeth Foster on behalf of V.G.R., a minor, through counsel, complains and alleges against Defendants as follows:

## PRELIMINARY STATEMENT

This is a civil rights action arising out of a October 10, 2019, incident where Mr. Reid was injured due to excessive force used by Defendants, and additional civil rights violations relating to V.G.R. being unlawfully questioned without the presence of a parent or legal guardian. Plaintiffs seek relief for Defendants' violations of these rights guaranteed by the United States Constitution and the Constitution of the State of Utah. These rights are further clarified and supplemented by the Civil Rights Act of 1871, codified as 42 U.S.C. § 1983 and § 1988, and by the laws and the Unnecessary Rigor Clause of the Constitution of the State of Utah. Plaintiff seeks compensatory damages; affirmative and equitable relief; an award of attorney's fees, costs, and interest; and other and further relief as this Court deems just and equitable. This action also arises under the constitution, law, and statutes of the State of Utah.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331, 1334, and 1367 because the matters in controversy arise under the Constitution and the laws of the United States.

2. This action seeks redress for violations of the civil rights laws of the United States, and jurisdiction is therefore proper pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983.

3. The claims made in this Complaint occurred and arose in the State of Utah, in this District, and in the Southern Division. Venue is therefore proper under 28 U.S.C. § 1391.

4. This Court also has supplemental jurisdiction over claims of excessive force under Article I §14 of the Utah Constitution pursuant to 28 U.S.C. § 1367.

5.      Plaintiff is seeking damages pursuant to the claims for relief specified below in amounts to be proved at trial.

6.      The acts upon which this complaint is based occurred in Brigham City, Box Elder County, State of Utah. This Court therefore has jurisdiction for trial of the above captioned matter.

7.      Plaintiff denies that any statutory Notice of Claim is required of any of the claims in this Complaint, as they deal with federal and/or state constitutional violations, and state law notice of such claims is not required.

## PARTIES

8.      **Plaintiff Vaughn Reid ("Reid")** is a citizen of the United States of America and is a current resident of St. Joseph County, State of Indiana.

9.      **Plaintiff Lilibeth Foster ("Foster")** is a citizen of the United States of America and is a current resident of Elhark County, State of Indiana.

10.     **Plaintiff V.G.R ("V.G.R."), a minor** is a citizen of the United States of America and is a current resident of Elkhart County, State of Indiana.

11.     **Defendant Sergeant Bronson Wood ("Wood")**, at all times relevant to this matter, was a Utah Highway Patrol police officer, presumed to be a citizen of the United States of America and resident of Sevier County, State of Utah.

12.     **Defendant Deputy Troy Campbell ("Campbell")**, at all times relevant to this matter, was a Sevier County police officer, presumed to be a citizen of the United States of America and resident of Sevier County, State of Utah.

13.    **Defendant Sergeant Adrian Hillin ("Hillin")**, at all times relevant to this matter, was a Sevier County police officer, presumed to be a citizen of the United States of America and resident of Sevier County, State of Utah.

14.    **Defendant Trooper Rebecca Marshall ("Marshall")**, at all times relevant to this matter, was a Utah Highway Patrol police officer, presumed to be a citizen of the United States of America and resident of Sevier County, State of Utah.

15.    **Defendant Trooper/DEA/Agent Bremmer ("Bremmer")**, at all times relevant to this matter, was a Utah Highway Patrol police officer, presumed to be a citizen of the United States of America and resident of Sevier County, State of Utah.

16.    At the time the acts upon which this Complaint are based occurred, Defendants were acting as a law enforcement officers employed by the Utah Highway Patrol ("UHP"), Sevier County Police Department ("SCPD"), and/or Richfield City Police Department ("RCPD"). This action is brought against Defendants Wood, Campbell, Hillin, Marshall, and Bremmer in their individual and official capacities. Their authority to act was derived from Utah State law and/or the commands and directives of their superiors. All of their acts listed in the following paragraphs were performed under color of the laws, statutes, ordinances, regulations, policies, customs, and usages of the State of Utah and Sevier County.

17.    **Defendant Colonel Michael Rapich, Superintendent of the Utah Highway Patrol ("UHP")** is responsible for creating and enforcing the rules and policies for UHP. Colonel Rapich is sued in his official capacity.

18.     **Defendant Sevier County ("the County")** is a political subdivision of the State of Utah. The County can be sued in its own name. The County supervises and is ultimately responsible for the Sevier County Sherrif's Department. The County's policies directly caused the Plaintiffs' harm, justifying an award of damages against eh County in Plaintiffs' favor. The County is a "person" within the meaning of 42 U.S.C. §1983.

19.     **Defendant Richfield City ("the City")** is a political subdivision of the State of Utah. The City can be sued in its own name. The City supervises and is ultimately responsible for the Richfield City Police Department. The City's policies directly caused the Plaintiffs' harm, justifying an award of damages against eh County in Plaintiffs' favor. The County is a "person" within the meaning of 42 U.S.C. §1983.

20.     **Defendant John and Jane Doe** are persons whose names are unknown at this time, and who might have caused or contributed to the actions of the named Defendants.

## FACTUAL ALLEGATIONS

21.     On or about October 10, 2019, Plaintiff Lilibeth Foster was driving was driving through a construction zone on I-70 in Sevier County, with Plaintiff Vaughn Reid sitting passenger and V.G.R. in the backseat with their two dogs.

22.     At that same time and place, Defendant Sergeant Bronson Wood was also driving through a construction zone on I-70, travelling behind Plaintiffs.

23.     Defendant Wood pulled over Plaintiffs' vehicle around milepost 18, alleging they were speeding.

24.     During the stop, Defendant Wood claimed to have detected a scent resembling marijuana as he approached the vehicle, using this as a pretext to harass and intimidate the occupants.

25.     Defendant Wood instructed Plaintiff Foster to come to his vehicle while he completed the citation for speeding.

26.     While at his vehicle, he questioned Plaintiff Foster, asking about their destination, point of origin, and even questioning if the car was actually a rental.

27.     Defendant Wood then inquired whether Plaintiff Foster had any previous arrests.

28.     Plaintiff Foster disclosed a 2010 DUI and a more recent incident related to leaving the scene of an accident.

29.     Defendant Wood indicated Plaintiff Foster should get in his car. After she did so, Defendant Wood informed her that he smelt marijuana and asked if she had a medical card.

30.     Plaintiff Foster had a medical marijuana card that had expired in 2017, two years prior to this date, but explained there could be a residual smell.

31.     Plaintiff Foster said she had gotten marijuana from a dispensary in California but had not smoked since being in California, where they were coming from, and denied that her passenger, Plaintiff Vaughn Reid, had smoked.

32.     Defendant Wood stated he was suspicious and told Plaintiff Foster he would be checking her story with Plaintiff Reid. He also called Richfield Communications Center and asked them to check Plaintiff Foster's license for validity and run a criminal history check.

33.     Defendant Wood then approached Plaintiff Reid, who was still in the vehicle.

34.     Plaintiff Reid told Defendant Wood a similar explanation of where they were coming from and going to.

35.     Upon further questioning, Plaintiff Reid told Defendant Wood that he did not have a marijuana card.

36.     Defendant Wood did not ask Plaintiff Reid if he had been using marijuana.

37.     Defendant Wood told Plaintiff Reid he would be searching the vehicle for drugs and started back to his own car.

38.     As Defendant Wood was speaking to Richfield Communications Center from inside of his vehicle, Plaintiff Reid moved into the driver's seat of the rental and pulled away, with V.G.R. still in the backseat.

39.     Plaintiff Foster was still in the car with Defendant Wood, so he called for assistance.

40.     Other troopers responded and began pursuing Plaintiff Reid.

41.     After waiting a few minutes, Defendant Wood began headed eastbound to see if Plaintiff Reid could be stopped or turned around.

42.     Defendant Wood stated he suspected there were narcotics in the car.

43.     Eventually, another deputy stopped Plaintiff Reid's vehicle at approximately milepost 29.

44.     Defendant Trooper Kelly Roberts and Defendant Deputy Troy Campbell detained Plaintiff Reid and Stg. Wood and obtained his identification.

45.     Defendant Wood went to Plaintiff Reid's vehicle and proceeded to speak with V.G.R., who was five (5) years old at the time.

46.     In dash cam footage, as well as in his own statement, Defendant Wood admitted he asked the child if his dad stopped the car after leaving the officer and his mother.

47.     V.G.R responded and said they did stop, and that they didn't stop again until the moment when he was being questioned.

48.     The officers removed the dogs from Plaintiff Reid's vehicle and put them in Defendant Campbell's vehicle.

49.     After searching the vehicle, officers found nothing but some luggage.

50.     Defendant Wood continued to claim that the smell of marijuana was still quite strong.

51.     Sevier County Defendant Sergeant Adrian Hillin and Defendant Campbell took V.G.R. back to Defendant Campbell's vehicle where they continued to question the child without either parent present.

52.     After additional prompting by the officers, V.G.R. said he could show them where his dad had pulled off and thrown a bag out.

53.     Defendant Campbell then drove off with V.G.R., again without either parent present, to search for the bag along the Interstate.

54. Furthermore, audio/video recordings reflect that after V.G.R. had asked for his mother and his mother had asked for him, officers admitted they did not want to return him to his mother because he might "stop talking."

55. While searching for the bag, officers allege that another witness called the police and reported seeing Plaintiff Reid stop and throw a bag out of his car about one mile prior to milepost 23, and that they thought there should be skid marks on the road where he pulled off.

56. The officers located a bag which contained marijuana and other narcotics.

57. There were also medical papers and a pinkeye prescription with Plaintiff Reid's name on them that he had left in his coat, but that Defendants alleged were found in the bag.

58. Defendants retrieved a cell phone from Plaintiffs' vehicle and then called a tow truck to pick it up.

59. Defendants then took Plaintiff Reid to the County Jail, then to the Utah Highway Patrol Office where he was interviewed by Defendants Agent Rebecca Marshall, Agent Bremmer, and Sergeant Wood.

60. Defendant Marshall was right next to Plaintiff Reid, and another agent was on his other side.

61. The officers asked Plaintiff Reid a couple of questions and he was hesitant to answer.

62. The agents claimed the contents of the bag found were Plaintiff Reid's and asked if they could have his phone.

63.     Plaintiff Reid said no, so they attempted to forcibly grab the phone from him while he was handcuffed.

64.     The officers claimed that Plaintiff Reid then attempted to break the phone.

65.     Defendants pushed Plaintiff Reid to the floor where multiple officers started beating him.

66.     Plaintiff Reid specifically remembers Defendant Wood hitting him.

67.     Plaintiff Reid curled up in a ball when one of the officers began choking him and eventually, after taking his phone, one of the individuals instructed the officers to let go of Plaintiff Reid.

68.     In Defendant Wood's statement he summarized the altercation and indicated Plaintiff Reid sustained a laceration on his forehead as a result of the altercation.

69.     One side of Plaintiff Reid's face was bleeding and he remembers an officer asking if Plaintiff Reid had AIDS because his blood was all over them.

70.     Plaintiff Reid sat on the floor and continued to bleed until the ambulance came.

71.     One of the EMTs told Plaintiff Reid that the officers should not have attacked him like they did, especially while he was handcuffed, and they reported that Plaintiff Reid would need stitches for the deep laceration on his forehead.

72.     Plaintiff Reid began losing consciousness and was loaded onto a gurney and into the Sevier County Ambulance vehicle where he was then taken to the Emergency Room.

73.     After receiving stitches and being medically cleared, Plaintiff Reid was taken back to the Sevier County Jail where he was booked.

74.     Plaintiff Reid continues to receive treatment for chronic pain from these injuries.

75.     Plaintiffs' damages include but are not limited to the following:

a.      **Violation of Constitutional Rights.**  The violation of one's constitutional rights alone constitutes a damage, whether or not physical injury is suffered.  *Martin v. Board of Cnty Com'rs of Cnty of Pueblo,* 909 F.2d 402, 406 (10th Cir 1990).

b.      **Physical Injury to Plaintiff Reid.** In addition to the violation of Plaintiff Reid's rights, Plaintiff Reid suffered a laceration to his head and ongoing back pain due to the deliberate indifference and unreasonable, excessive force of Respondents. Plaintiff Reid received treatment the day of the arrest, treatment for his back is ongoing. Plaintiff Reid has gone to the hospital multiple times for his pain and his life has been negatively impacted due to his injuries. Plaintiff Reid's ability to work or fulfill his daily tasks has been hindered because most of his relief comes from laying down which causes him to be unable to leave the house most days.

c.      **Economic Damages to Plaintiff Reid**. Due to his injuries, Plaintiff Reid was forced to obtain medical treatment as described above. Plaintiff Reid was treated for lower back pain and head and eye injuries at Sevier Valley Hospital, Elkhart General Hospital, Beacon Health System, and Memorial Hospital. Plaintiff Reid continues to be treated for his injuries to this day and continues to accrue medical bills. Additionally, due to injury of his back, Plaintiff Reid has been unable to work regularly. Before this incident he was making $19/hour and working

at least 40 hours/week. He has not been able to hold down a job since his back pain prevents him from working physical labor, like he did before.

d. **Compensatory and Punitive Damages to Plaintiff Reid and to V.G.R. through his parents.** Plaintiff Reid is entitled to compensatory and punitive damages due to Defendants' unreasonable and excessive force inflicted upon Plaintiff Reid, and both Plaintiff Reid and Foster are entitled to these damages for Defendants' unconstitutional interrogation of the minor V.G.R. and negligence in training, supervising, and failing to have a policy and/ or failing to follow that policy, with regard to how officers are to deal with the interrogation of minors. Defendants used force against Plaintiff Reid when absolutely no force was necessary or called for. Defendants' conduct was willful and deliberate. Defendants also knowingly and willingly questioned V.G.R. without a parent or legal guardian present. Defendants violated Plaintiff Reid's and V.G.R.'s civil rights, and if this case goes to a jury, Defendants would be subject to significant compensatory and punitive damages.

## CAUSES OF ACTION

76. The headings stated under each individual cause of action are for general descriptive purposes only and are not intended to limit Plaintiff's causes of action. Plaintiff reserves the right to assert any legal theory or cause of action applicable to the facts set forth in this Complaint pursuant to F.R.Civ.P. 8.

## FIRST CAUSE OF ACTION

### ~ Excessive Force in Violation of the Fourteenth Amendment ~
### Cognizable Under 42 U.S.C. § 1983

*Against Defendants including Agent Rebecca Marshall, Agent Bremmer, and Sergeant Bronson Wood*

77.     Plaintiff incorporates by reference all above allegations.

78.     At all relevant times, Defendants Marshall, Bremmer, and Wood were employed as a police officers and/or agents with UHP.

79.     At all times relevant hereto and in performance of the acts set forth herein, Defendants Marshall, Bremmer, and Wood acted under color of state law.

80.     At all times relevant hereto and in performance of the acts set forth herein, Defendants Marshall, Bremmer, and Wood actively and personally caused the violations of Reid's constitutional rights.

81.     Defendant Marshall's, Bremmer's, and Wood's conduct as alleged herein subjected Plaintiff Reid to the deprivation of his rights protected under the Fourteenth Amendment to the United States Constitution.

82.     At all times relevant herein, it was clearly established that in order to demonstrate that the force used was excessive in violation of the Fourteenth Amendment's due process clause, a pretrial detainee must show only that the force used against him was objectively unreasonable. *Kingsley v. Hendrickson*, 576 U.S. ___, 135 S. Ct. 2466, 2470 (2015) (italics in original) (emphasis added).

83.     At the time of Defendant Marshall's, Bremmer's, and Wood's use of force against Plaintiff Reid, the officers were in no danger from him whatsoever, nor was anyone else in any danger from him, since he was handcuffed in the detainment room surrounded by officers.

84.     Defendants Marshall, Bremmer, and Wood used reckless, excessive, unnecessary, improper, and dangerous force against Plaintiff Reid simply because he would not hand over his cell phone.

85.     In The Eight Circuit ruled arbitrary use of force is not authorized nor justifies punitive use of force on difficult inmates not posing a real threat to other persons or raising security concerns. *Treats v. Morgan*, 308 F.3d 868, 872 (8th Cir. 2002) (emphasis added).

86.     Further, even after an individual is arrested, while an officer may in some circumstances be allowed to search a cell phone without permission or a warrant, they are not allowed to us excessive force (such as beating Plaintiff Reid while in handcuffs on the floor) in order to obtain his phone.

87.     These protections are even more applicable to a pretrial detainee, like Vaughn, who has not yet been convicted of a crime: The Tenth Circuit has held:

> Neither is this the end to what we know with certainty about the state of the law in 1997 regarding pretrial detainees. By then the Supreme Court had held that the Fourteenth Amendment's guarantee of due process prohibits any punishment of those awaiting trial. Punishment may be constitutionally acceptable for persons convicted of crimes B at least so long as it doesn't amount to "cruel and unusual" punishment as defined by *Estelle* and *Hudson*. But punishment is never constitutionally permissible for presumptively innocent individuals awaiting trial.

*Blackmon v. Sutton,* 734 F.3d 1237, 1241 (2013) (multiple United State Supreme Court Decisions omitted; emphasis added).

88.     In *Riley v. California* 134 S. Ct. 2473 (2014), the Supreme Court ruled that it is not that the information on a cell phone is immune from search; it is instead that a warrant is generally required before such a search, even when a cell phone is seized incident to arrest. Moreover, the immense storage capacity of modern cell phones implicated privacy concerns with regard to the extent of information which could be accessed on the phones. Even if Plaintiff Reid was attempting to destroy his phone, and even if the seizure of the phone is found to be necessary, because the officers were in no imminent danger of death or serious physical injury, using excessive force to get the phone was not necessary or reasonable.

89.     The violence administered to Plaintiff Reid by Defendants was excessive, resulting in a significant injury.

90.     The violations of Reid's rights are actionable under 42 U.S.C. §1983, and Plaintiff is entitled to judgment against Defendants Marshall, Bremmer, and Wood in an amount to be proved at trial, plus costs and attorney fees pursuant to 42 U.S.C. § 1988.

## SECOND CAUSE OF ACTION

### ~ Failure to Train/Supervise ~
### Cognizable Under 42 U.S.C. § 1983

### *Against Defendants Colonel Rapich (UHP), Sevier County, and Richfield City*

91.     Plaintiff incorporates by reference all above allegations.

92.     Defendants Rapich (UHP), the County, and the City are required to take action to properly train and supervise their employees or agents and prevent their unlawful and unconstitutional actions.

93.     Defendants Rapich (UHP), the County, and the City were deliberately indifferent toward the proper training and supervision of their employees and agents.

94.     Defendants Rapich (UHP), the County, and the City failed to properly train and supervise their employees and agents.

95.     Defendants engaged in the herein-described conduct pursuant to and as a result of policies, practices, customs, and/or decisions of Defendants Rapich (UHP), the County, and the City.

96.     Defendants Rapich (UHP), the County, and the City violated Plaintiff Reid's clearly established State and Federal Constitutional rights.

97.     The use of force in this situation was clearly excessive and unjustified.

98.     The involvement of multiple officers in these violations also indicates a failure to train and/or supervise officers by Defendants Rapich (UHP), the County, and the City, and led to the injuries Plaintiff Reid sustained.

99.     It was foreseeable that these officers would encounter pre-trial detainees who were non-compliant to requests and/or orders.

100.    Defendants Rapich (UHP), the County, and the City had a duty to fully and adequately train and supervise officers to adhere to the proscription against the use of unnecessary and excessive force in accordance with clearly established law pursuant to the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution.

101.     This failure to train and supervise officers to adhere to the proscriptions against the use of unnecessary and excessive force demonstrated a reckless indifference to the rights, safety, well-being, and very lives of pretrial detainees, including those of Plaintiff Reid.

102.     The excessive use of force described herein reflects a practice or custom informally and customarily condoned by these entities, which practice or custom consists of allowing its officers to use unnecessary and excessive force against pretrial detainees without any resulting disciplinary action or other denunciation.

103.     The effect of this indifference was to expose pretrial detainees, such as Plaintiff Reid, to severe injury resulting from the use of unnecessarily excessive force, such as occurred in this case.

104.     Plaintiff Reid is entitled to an award of damages against Defendants, as allowed by law.

105.     The actions of Defendants Rapich (UHP), the County, and the City as alleged herein were the proximate cause of the injuries and damages sustained by Plaintiff Reid, as described herein.

### THIRD CAUSE OF ACTION

**~ Illegal Interrogation of a Minor in Violation of the Fifth and Sixth Amendments ~
Cognizable Under 42 U.S.C. § 1983**

*Against Defendants Sergeant Bronson Wood, Deputy Troy Campbell, and Sergeant Adrian Hillin, in Their Individual Capacities*

106.     Plaintiff incorporates by reference all above allegations.

107. At all relevant times, Defendants Wood, Campbell, and Hillin acted in their individual capacities.

108. At all times relevant hereto and in performance of the acts set forth herein, Defendants Wood, Campbell, and Hillin actively and personally caused the violations of Plaintiff Reid's constitutional rights.

109. Defendant Wood's, Campbell's, and Hillin's conduct as alleged herein subjected Plaintiff Reid to the deprivation of his rights protected under the Fifth and Sixth Amendments to the United States Constitution.

110. As the Supreme Court recognized in *Miranda v. Arizona*, 384 U.S. 436 (1996), place inherently compelling pressures on the persons interrogated. *Thompson v. Keohane*, 516 U.S. 99, 107 (1995). To safeguard the Fifth Amendment's privilege against self-incrimination, *Miranda* held that suspects interrogated while in police custody must be told they have the right to remain silent, that anything they say can be used against them in court, and that they are entitled to an attorney, either retained or appointed. Id. (Citing *Miranda*, 384 U.S. at 444).

111. The Sixth Amendment protects the right to hae legal counsel and/or to have a parent or lawyer present during questioning.

112. Defendants Wood, Campbell, and Hillin interrogated V.G.R without reading him the *Miranda* warning and without having his parents present.

113. V.G.R. was detained in Police vehicle immediately after questioning V.G.R.'s father, Plaintiff Reid, and taken to identify where the bag was thrown as well as undergo questioning in said vehicle, without either parent present.

114. Neither Wood, Campbell, nor Hillin read V.G.R. his rights prior to questioning him or taking V.G.R. with them on a ride in their vehicle.

115. This interrogation took place after V.G.R. had requested his parents, and after his mother had requested to be with him.

116. Audio of the officers evidences that they knew it was improper to hold and question V.G.R. after he had requested his parents, but opted to do so anyway because they were worried he would not talk to them once his parents were present,

117. Such violation of V.G.R.'s rights is actionable under 42 U.S.C. §1983, and V.G.R. is entitled to judgment against Respondents in an amount to be proved at trial, plus costs and attorney's fees pursuant to 42 U.S.C. §1988.

## JURY DEMAND

Plaintiff requests a jury trial on all issues in this case.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

1. For general compensatory damages in an amount to be determined at trial;

2. For special damages, such as medical bills, as are shown at trial;

3. For pre-judgment interest on the damages assessed by the verdict of the jury, as allowed by law;

4. For Plaintiff's costs and reasonable attorney fees incurred herein, pursuant to 42 U.S.C. § 1988; and

5. For such other and further relief as the Court deems just and proper.

DATED this 6th day of October, 2023.

**SYKES MCALLISTER LAW OFFICES, PLLC**

*/s/ Alyson C. McAllister*
ALYSON C. McALLISTER
*Attorney for Plaintiffs*